UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

KATHRYN LOUIS,

                        Plaintiff,

       V.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security[1],

                        Defendant.

**REPORT AND RECOMMENDATION**

11-CV-1287
(TJM/VEB)

---

## I. INTRODUCTION

In December of 2009, Plaintiff Kathryn Louis applied for supplemental security income ("SSI") benefits under the Social Security Act. Plaintiff alleges that she has been unable to work since March of 2009 due to physical and psychological impairments. The Commissioner of Social Security denied Plaintiff's application.

Plaintiff, by and through her attorneys, McMahon Kublick & Smith, Jennifer Gale Smith, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On January 3, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 15).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure .

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits on December 23, 2009, alleging disability beginning on March 17, 2009. (T at 105-112).[2] The application was denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on May 10, 2011, in Syracuse, New York, before ALJ John P. Ramos.[3] (T at 21). Plaintiff appeared with an attorney and testified. (T at 24-41).

On June 27, 2011, ALJ Ramos issued a written decision finding that Plaintiff was not disabled, as defined under the Social Security Act, and was therefore not entitled to benefits. (T at 5-16). The ALJ's decision became the Commissioner's final decision on September 9, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

Plaintiff, through counsel, timely commenced this action on October 28, 2011. (Docket No. 1). The Commissioner interposed an Answer on February 9, 2012. (Docket No. 8). Plaintiff filed a supporting Brief on February 16, 2012. (Docket No. 10). The Commissioner filed a Brief in opposition on April 20, 2012. (Docket No. 12).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[4]

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[3]The ALJ presided via videoconference. (T at 23).

[4]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

2

For the reasons that follow, it is recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and this case be dismissed.

### III. DISCUSSION

**A.     Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained

"even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[5]

---

[5]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.    Analysis**

    **1.    Commissioner's Decision**

The ALJ found that Plaintiff had not engaged in substantial gainful activity since December 23, 2009, the date she applied for SSI benefits. (T at 10). The ALJ concluded that Plaintiff had the following severe impairments, as defined under the Social Security Act: degenerative disc disease of the cervical spine-status post surgery, depression, anxiety, status post-pneumothorax with cutaneous pain, COPD, and cocaine abuse in remission. (T at 10). However, the ALJ found that Plaintiff's impairments did meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). (T at 10-12).

The ALJ determined that Plaintiff retained the residual functional capacity to occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; sit for 6 hours in an 8-

---

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

hour day; stand/walk for 6 hours in an 8-hour day; and occasionally engage in postural activities. (T at 12). The ALJ concluded that Plaintiff should avoid exposure to concentrated respiratory irritants and extremes of temperature. (T at 12). The ALJ found that Plaintiff retained the ability to understand and follow simple instructions and directions; perform simple tasks with supervision and independently; maintain attention/concentration for tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with others; and handle reasonable levels of simple, repetitive work-related stress. (T at 12-14). This is consistent with an ability to perform light work, with the non-exertional limitations outlined above. At step five of his analysis, the ALJ referenced Plaintiff's ability to perform light work, with those non-exertional limitations. (T at 16).

The ALJ concluded that Plaintiff could not perform her past relevant work as a cook, baker, or food service worker. (T at 14). Considering Plaintiff's age (45 on the date the application was filed), education (high school), work experience, and residual functional capacity, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 15-16). As such, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, between December 23, 2009 (the application date) and June 27, 2011 (the date of the ALJ's decision). (T at 16). As noted above, the ALJ's decision became the Commissioner's final decision on September 9, 2011, when the Appeals Council denied Plaintiff's request for review. (T at 1-4).

### 2. Plaintiff's Arguments

Plaintiff challenges the Commissioner's decision. She offers three (3) principal arguments in support of her position. First, Plaintiff contends that the ALJ did not give

adequate consideration to her treating physician's opinion. Second, Plaintiff challenges the ALJ's credibility determination. Third, Plaintiff argues that the ALJ's step five analysis was flawed. This Court will address each argument in turn.

### a. Treating Physician's Opinion

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[6]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances. In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In this case, Dr. Matthew McKay, a treating physician, completed a Medical Source

---

[6]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

Statement of Ability to Do Work-Related Activities (Physical) form in April of 2010. Dr. McKay opined that Plaintiff was limited to lifting/carrying less than 10 pounds, standing/walking less than 2 hours in an 8-hour workday, and sitting less than about 6 hours in an 8-hour workday. (T at 404-05). He also assessed a limited range of motion with regard to Plaintiff's upper extremities and opined that Plaintiff could never climb, crawl, or stoop, and only occasionally balance, kneel, or crouch. (T at 405). Dr. McKay also indicated limitations with regard to reaching in all directions, seeing, hearing, and speaking. (T at 406). He also diagnosed "moderate emphysema" and assessed limitations with respect to temperature extremes, dust, humidity, and fumes/odors/chemicals/gases. (T at 407).

The ALJ discounted Dr. McKay's opinion, finding it "not supported by the clinical findings. . . . ." (T at 14). This Court finds that the ALJ's decision to discount Dr. McKay's opinion was supported by substantial evidence and in accord with applicable law. Dr. McKay's contemporaneous treatment notes were generally inconsistent with the limitations assessed in the April 2010 form and frequently failed to mention musculoskeletal impairments at all. (T at 337 - describing back pain as "intermittent" and "positional," noting "some tenderness," but "good" range of motion, doing "fairly well" with prescription treatment for COPD")(T at 339 - physical exam was "largely benign")(T at 340 - directing Plaintiff to "remain physically active")(T at 345 - describing chest x-ray as "negative", assessing "full" range of motion)(T at 408 - noting "some tenderness over the right ribs," to be treated with Tylenol)(T at 414 - reporting that Plaintiff "denies any muscle weakness, gait difficulties, pain, joint stiffness," noting no difficulties with mobility, range of motion, or instability)(T at 415 - "[g]ood range of motion about the major muscle groups").

8

In April of 2010, Dr. Kalyani Ganesh performed a consultative examination. Dr. Ganesh reported that Plaintiff had normal gait and stance and she demonstrated the ability to walk on heels and toes without difficulty. (T at 360). Plaintiff had full flexion in her cervical spine and lumbar spine; full range of motion in her shoulders, elbows, forearms, and wrists bilaterally; full range of motion in her hips, knees, and ankles bilaterally; and full strength in her upper and lower extremities. (T at 361). No muscle atrophy was evident. (T at 361). Dr. Ganesh assessed no limitation as to sitting, standing, or walking and moderate limitation with respect to lifting, carrying, pushing, and pulling. (T at 362).

Dr. Kristen Barry performed a consultative psychiatric examination in April of 2010. Dr. Barry found Plaintiff to be a "poor" informant, with a "fair" manner of relating and social skills. (T at 364). Plaintiff demonstrated fair insight and judgment and intact attention and concentration. (T at 365). Her hobbies including boating, walking, reading, and watching television. (T at 366). Dr. Barry opined that Plaintiff could understand and follow simple directions and instructions and maintain attention and concentration. (T at 366). She found that Plaintiff would have "some difficulty adjusting and handling stressors," which was consistent with the ALJ's conclusion that Plaintiff was limited to "reasonable levels of simple, repetitive work-related stress." (T at 13).

Dr. T. Andrews, a non-examining State Agency review consultant, assessed mild restrictions with regard to activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T at 378).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed

to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Moreover, "[c]onflicts in evidence . . . are for the Commissioner to resolve." White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id.

Here, the evidence outlined above provides adequate support for the ALJ's decision to discount Dr. McKay's April 2010 opinion. It also constitutes substantial evidence for the ALJ's overall RFC assessment. In particular, Dr. May's treatment notes, the consultative examiners' opinions, and the assessment of the State Agency review consultant constitute "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion" that Plaintiff was not disabled, as defined under the Social Security Act, during the relevant time period. See Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). This aspect of the ALJ's decision should therefore be sustained.

### b. Credibility

Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims, and they must be thoroughly considered. See Ber v. Celebrezze, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment(s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

11

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows:

She has constant neck pain, which radiates to her fingers. (T at 25-26). She has difficulty gripping objects. (T at 26). She has trouble standing or sitting for long periods due to pain. (T at 26). She has difficulty breathing related to COPD, which is aggravated by exposure to fumes. (T at 28). She has trouble ascending and descending stairs. (T at 28). She cannot walk significant distances and has trouble lifting a gallon of milk. (T at 29). She

12

cannot sit or stand for more than a "few hours." (T at 31). She suffers from significant depression, which causes crying spells. (T at 31-32).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not totally credible. (T at 14). The ALJ's finding was supported by substantial evidence. As outlined above, the contemporaneous treatment notes, consultative examiners' opinions, and State Agency review consultant's determination were supportive of the ALJ's assessment and contradicted Plaintiff's subjective complaints. In addition, Plaintiff was able to perform a wide range of activities of daily living, including living alone, preparing meals, visiting with family and friends, boating, and walking. (T at 11-13, 39-40, 149-51, 360, 365, 366).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

Moreover, although Plaintiff certainly appears to live with pain, "disability requires

more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

### c. Step Five Analysis

At step 5 in the sequential evaluation, an ALJ is required to perform a two part process to first assess the claimant's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that the claimant could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the

Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

Considering Plaintiff's age (45 years old), education (high school), and RFC, the ALJ found Plaintiff "not disabled" within the framework of Rule 202.21, Table No. 2, of the Grid. (T at 15-16). Plaintiff challenges the ALJ's reliance on the Grid framework, arguing that her work capacity is significant diminished by her non-exertional impairments.

The ALJ's determination, however, was supported by substantial evidence. "[T]he mere existence of a nonexertional impairment does not automatically preclude reliance on the guidelines." Zabala v. Astrue, 595 F.3d 402, 410–411 (2d Cir.2010). In Zabala, the Second Circuit concluded that the use of the Grids was appropriate where the claimant's mental condition did not limit her ability to perform unskilled work, including carrying out simple instructions. Id. at 411. In the present case, Dr. Barry opined that Plaintiff could understand and follow simple directions and instructions and maintain attention and concentration and would have "some difficulty adjusting and handling stressors," which was consistent with the ALJ's conclusion that Plaintiff was limited to "reasonable levels of simple, repetitive work-related stress." (T at 13, 336). Dr. Andrews assessed mild restrictions with regard to activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace. (T at 378). As such, this Court finds that substantial evidence supports the ALJ's reliance on the Grid framework to conclude, that jobs exist in the economy that Plaintiff can perform. The ALJ's decision in this regard should be affirmed.

## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. In sum, this Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated: March 14, 2013
Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Dated: March 14, 2013

      Syracuse, New York

_____
Victor E. Bianchini
United States Magistrate Judge